Mary A. Shelton et al. *v.* Julia P. Thompson et al.

[53 South. 538.]

Public Lands. *Void efforts to enter. When not aided. Laws* 1890, *ch.* 11. *Swamp land. Ordinance Constitutional Convention of* 1890.

A wholly void and inoperative effort to acquire title to public lands cannot be made valid and operative;

(a) By an act of the legislature withdrawing the lands from sale for a short time and authorizing the claimant to perfect his title during that time by paying to the state a small sum, where the terms of the act were never acted upon; nor

(b) By an ordinance of a constitutional convention merely disclaiming title on the part of the state, without attempting to confer title on the claimant or any one else.

From the chancery court of Attala county.

Hon. Jams F. McCool, Chancellor.

Mrs. Shelton and others, appellants, were complainants in the court below; Mrs. Thompson and others, appellees, were defendants there. From a decree in defendant's favor, sustaining a demurrer to the bill of complaint, and dismissing the suit, the complainants appealed to the supreme court. The object of the suit was to cancel defendant's title to lands.

The complainant's deraigned title as follows: United States to the state of Mississippi, under swamp land grant; location of the land in question, situated in Attala county, by Tunica county scrip, December 31, 1853, by Thomas Green, ancestor of complainants. They claim, also, that the constitutional convention of 1890, by resolution, ratified their title. Said resolution was adopted November 1, 1890, by the constitutional convention, and provides that:

"Whereas, doubts have arisen as to the title of original purchasers of certain swamp and overflowed lands by reason of the entry of said lands with the land scrip of counties other than the county in which said lands were situated; and whereas, by act of the legislature of the state of Mississippi, approved February 17, 1890 [Laws 1890, c. 11, § 2], 'all persons now holding swamp lands under such invalid purchase shall have the right to purchase the same for a period of two years at the uniform price of twelve and one-half cents per acre' upon the terms required by said act, therefore:

"Section 1. Be it ordained, that the state of Mississippi hereby waives the payment of said sum named in said act, and disclaims any interest or title in and to the said lands on account of erroneous locations thereof."

The act of 1890, referred to, was never complied with by complainants or by any person under whom they claim. The further facts are stated in or are clearly inferable from the opinion of the court.

*Green & Green* and *Luckett & Guyton,* for appellants.

This was an action to cancel as clouds upon title certain deeds and claims made by defendants therein. The complainants deraigned their title as follows:

1.   Grant made by the United States to the state of Mississippi under swamp land grant.

2.   The location of Tunica county scrip, December 31, 1853, by Thomas Green, the ancestor of complainants.

3. The ratification of the constitutional convention of the title in 1890, and the question presented seems to us to be easy of solution.

The bases of the demurrer are: (1) No equity shown upon the face of the bill.

The bill was drafted under section 550 of the Code of 1906, whereby it was provided:

"When a person, not the rightful owner of any real estate, shall have any conveyance or other evidence of title thereto, or shall assert any claim, or pretend to have any right or title thereto, which may cast doubt or suspicion on the title of the real owner, such real owner may file a bill in the chancery court to have such conveyance or other evidence of claim of title cancelled, and such cloud, doubt or suspicion removed from said title, whether such real owner be in possession or not, and whether the defendant be a resident of the state or not."

The bill deraigned a perfect record title unto Thomas Green and unto his heirs in virtue of the confirmation by the constitutional convention of the location had. By that instrument it was expressly provided that titles of this sort should be permitted and in pursuance of it, as there had been no adverse title asserted by the state, it became and was vested in the heirs of Thomas Green, and as against this title, so vested, there were outstanding claims asserted by other parties, and in pursuance of the rights conferred by section 550 of the Code of 1906, we respectfully submit that complainants' rights were amply protected.

(2) The second ground of demurrer is "said bill fails to disclose any right of action against said defendants or any of them."

Certainly when the true and lawful owner is having a claim adverse to his lawful title asserted by a party, which assertion casts a cloud and suspicion upon the true and lawful title here outlined and deraigned, we respectfully submit that the party who is the true owner

has the right to have his title cleared from such conditions.

The bill alleges that said parties are claiming the land above mentioned and that their pretended claim thereto casts a cloud, doubt and suspicion upon the true and lawful title of your orators. In addition to this it is shown that one G. W. Thompson made a deed to a part of this property and certainly that deed having been set forth as a cloud upon the lawful title shown, there could not be any question raised but that if appellants were the lawful owners and appellees were asserting a claim which cast a cloud, doubt and suspicion upon said lawful rights that appellants would have a right to have said claim so asserted cancelled.

(3) The demurrer says: "Said bill is too vague, uncertain, and indefinite for this court to base a decree thereon."

We respectfully submit that such is not the case. The title was deraigned in conformity with section 551 showing appellants to be the lawful owners and showing that the appellees were asserting a claim the nature of which is unknown to appellants but which casts a cloud upon their title, and under these circumstances we respectfully submit that the appellees are amply advised as to the rights of appellants. They have our title in full and the exhibits showing the grant to the state of Mississippi, the grant by the state of Mississippi to Thomas Green, and all of the other requisite facts are to be found in the law of the land whereof they are compelled to take notice.

(4) The fourth and fifth grounds of demurrer we really think have no standing whatever in this court as the statute whereunder the bill herein is filed expressly declares that the remedy herein provided can be invoked whether the owner is in possession thereof or not.

Counsel must have misconceived the purpose of the bill which is not to confirm appellant's title, because that

is perfect, but to cancel as a cloud upon that perfect record title outstanding claims which are not in fact in that category.

*J. A. P. Campbell,* for appellees.

The only question in this case is, Does the bill show title in the complainants? If not the demurrer was properly sustained.

The complainants claim as heirs of Green, who in 1853 obtained a patent to the land described which was void and so held in *Jackson & Zollicoffer* v. *Dilworth,* 39 Miss. 772, a similar case in all respects, which rightly settled the law on the much misunderstood subject of swamp and overflowed lands in Mississippi. Neither Green nor his heirs have ever acquired title or any semblance of it since, but after almost fifty-seven years since the void location and patent of their ancestor appellants his heirs seek to galvanize into life his worthless and defunct claim, without any other support for their claim than a worthless .act of the legislature of 1890 *never complied with* and an equally worthless ordinance of constitutional convention of 1890, which did no more than *disclaim* any title on the part of the state, *not attempting to confer any right whatever.* Surely an act of the legislature not complied with and an ordinance purely negative in terms effected no change in the condition of the title claimed under a void location and patent.

No further argument seems necessary but I submit a history of swamp and overflowed lands in Mississippi, from which it will be seen that the claim of appellants is without merit.

On September 28, 1850, the congress of the United States granted to Mississippi all of the swamp and overflowed lands then owned by the United States within the limits of Mississippi. These lands were unfit for occupancy and the purpose of the grant was for their reclamation. The act of congress vested title in the state, but

patents were provided for as the particular lands were ascertained. *Daniel* v. *Purvis*, 50 Miss. 261, and cases cited in the brief of counsel for plaintiff in error and in opinion of the court.

By far the greater part of these lands was in the Mississippi delta, but there was a good deal on the rivers and creeks in the eastern part of the state. The legislature dealt with these lands, the subject of the congressional grant, in March, 1852. Those in the delta were not disposed of by the state, but *scrip* with which to locate them was provided for, and this scrip to the amount of many hundreds of thousands of dollars was divided among certain delta counties. Subsequently further issues of scrip were made to delta counties. Acts of 1852, p. 41.

The swamp and overflowed lands situated in the eastern counties, of which Attala is one, were by the legislature granted to the counties with a scheme for their reclamation, Acts of 1852, p. 32, which vested title in the counties as the act of congress vested title in the state. 39 Miss. 772. By a strange misconception of the laws it was assumed that the scrip given the delta counties was good for location anywhere in the state. The delta counties were eager to dispose of their scrip and speculators purchased it on that idea and located it in counties to which the lands had been granted to the counties. The location and patent under which appellants claim was one of these conveying no title to their ancestor, and nothing has since occurred to improve it.

Jackson & Zollicoffer, citizens of Attala, purchased from the county at the prescribed prices all of the scrip issued to Attala county and with a forty acre piece located it on land which had been located by Tunica scrip the sort involved in this suit, and obtained a judgment of the High Court of Errors and Appeals deciding that the location of Tunica scrip was void. Being void it remains void.

The legislature uniformly acted on the fact that the lands in the counties of which Attala was one belonged to the counties to which they had been granted. Acts 1867, pp. 271, 301, 353, 354, 510, 551. There were doubtless many other acts of like character. In 1867 an act was passed reciting the sale of Attala scrip to Jackson and Zollicoffer and providing for substitute scrip for that stolen during the war. Act 1867, 631.

As stated above the legislature of 1890 provided that where a void location had been made the holder might within two years perfect it by paying twelve and one-half cents per acre, but it must not be supposed that the act applied to locations in counties to which the lands had been granted in 1852 and which had sold the scrip to individuals, but the locations on lands in the delta or elsewhere not included in the grant to counties. But Green (or heirs) did not proceed under the act of 1890, therefore his claim of title was not helped by it.

In the constitutional convention of 1890 an earnest and repeated effort was made to secure an ordinance to validate void locations but they failed, resulting in the harmless disclaimer of title in the state. That effected nothing. Yet the act of the legislature of 1890, *not complied with,* and this harmless ordinance and the void location and patent of Green constitute all of the claim of appellants.

It will be noted that leave was granted them to amend of which they did not avail themselves.

It is not claimed that complainant complied with the act of the legislature (which would have added nothing if complied with) and the act described the Green claim as *"invalid,"* while the ordinance simply disclaims title in the state leaving the claimants under Green with their *"invalid"* claim in no way helped by act or ordinance, and yet on these they base their claim.

MAYES, C. J., delivered the opinion of the court.

In the case of *Jackson* v. *Dilworth,* 39 Miss. 772, cited and approved in the cases of *Clements* v. *Anderson,* 46 Miss. 596, and *Green* v. *State,* 56 Miss. 774, it was held that one holding Tunica county scrip under the provisions of the act of March 18, 1852, could not locate lands in any county other than those named in the act. The bill in this case shows that this is just what was done. In view of the decisions which we have just cited, which have stood as the law of this state for so long, we do not deem any further discussion of the subject at all necessary. We may add, however, that neither the ordinances of the constitutional convention of 1890, nor chapter 11, p. 33, of the Acts of 1890, in any way affect the decisions above quoted, or the decision now made in this case. It is not pretended in the bill that the appellants were in a situation to avail themselves of the provisions of chapter 11 of the Acts of 1890, when they could have done so; nor is it shown that they ever made any attempt to comply with its provisions. In other words, as is very aptly put by counsel for appellee: "After almost fifty-seven years since the void location and patent of the ancestor of appellants, they seek to galvanize into life the worthless and defunct claim, without any other support for that claim than a worthless act of the legislature of 1890, never complied with by them, and an equally worthless ordinance of the constitutional convention of 1890, which did no more than disclaim any title on the part of the state, and did not attempt to confer any right whatever. Surely an act of the legislature, not complied with, and an ordinance, purely negative in terms, effected no change in the condition of the title claimed under a void location and patent."

Since the chancellor took this view of it, sustaining the demurrer and dismissing the appeal, the decree is affirmed. *Affirmed.*